IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JIM K.,[1]                          )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )   Case No. 19-cv-220-DGW[2]
                                    )
COMMISSIONER of SOCIAL              )
SECURITY,                           )
                                    )
        Defendant.                  )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in March 2015, alleging disability as of February 20, 2014. After holding an evidentiary hearing, an ALJ denied the application on December 26, 2017. (Tr. 19-27). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 3). Administrative remedies have been exhausted and a timely complaint was filed in

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 9 & 10.

this Court.

## Issue Raised by Plaintiff

Plaintiff argues that the ALJ failed to develop the record by obtaining all relevant medical records, leading him to err in his weighing of the medical opinions, assessment of plaintiff's subjective statements, and RFC assessment.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps

one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921

(7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He is insured for DIB through December 31, 2019.

The ALJ found that plaintiff had severe impairments of lumbar spinal stenosis and instability at L4-5 and L5-S1, status post decompression and fusion with revision of the fusion; pseudoarthrosis at L4-5 and L5-S1; atrial fibrillation; obstructive sleep apnea; asthma; and obesity.[3]

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level limited to occasional pushing and/or pulling with the bilateral upper extremities; occasional stooping and crouching; frequent climbing, balancing, kneeling, and crawling; and no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff was not able to do his past work as a printing press operator, but he was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record

---

[3] "Pseudarthrosis of the spine is also referred to as a non-union and means 'false joint'. It is the result of a failed spinal fusion." https://www.spinemd.com/symptoms-conditions/pseudarthrosis, visited July 29, 2019.

is directed to plaintiff's argument.

### 1. Agency Forms

Plaintiff was born in 1971. He was 46 years old on the date of the ALJ's decision. (Tr. 178). He had worked as a printing press operator from May 1990 to February 2014. (Tr. 170).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in September 2016.[4] (Tr. 34). He had been represented by a non-attorney representative from the same firm, The Advocator Group, prior to that. (Tr. 78). The representation agreement with the attorney was entered into on the day of the hearing. (Tr. 150).

The ALJ asked plaintiff's attorney whether he had "sent us or informed us of all the documents which need to be offered into the record that relate to the claimant's disability?" Counsel replied "yes," but also pointed out that plaintiff had seen "a doctor" the previous Friday and had an MRI. (Tr. 35).

Plaintiff worked as a pressman and roll tender for a printing company for sixteen years. That job ended because of a back injury. His doctors told him it was probably caused by a combination of work, genetics, and everyday wear and tear. (Tr. 40-41). He had two back surgeries and was still not fused according to the most recent MRI. The doctor he had seen most recently was the one he trusted the most. That doctor told him that he did not recommend a third surgery

---

[4] Plaintiff is represented by a different attorney in this Court.

because it was a 50/50 chance whether he would get better, and he might be worse. (Tr. 43).

At the end of the hearing, plaintiff asked the ALJ whether his last doctor's visit would be considered. The ALJ replied that it would be. (Tr. 55).

3. **Medical Records**

Plaintiff's primary care physician, Dr. Merkel, ordered a lumbar MRI in early 2014 because of low back and leg pain. It was done on March 3, 2014, and showed displaced nerve roots at L4-L5, displacement of the left L5 nerve root, and possible impingement of the left S1 nerve root. (Tr 348). Dr. Merkel referred him to a pain management specialist, who administered epidural steroid injections. Plaintiff reported about 30% relief with continued tingling and numbness in both feet. (Tr. 403). A nerve conduction study done on April 7, 2014 showed possible mild bilateral S1 radiculopathy. (Tr. 249). Dr. Merkel's office notes indicate that plaintiff had another appointment with the pain management specialist for April 10, 2014. (Tr. 318). However, the pain management specialist's records end on March 24, 2014, when he ordered the nerve conduction study. (Tr. 404).

In July 2014, Dr. Merkel did a preoperative evaluation for spinal fusion surgery to be done by Dr. Kennedy. This is the first mention of Dr. Kennedy in the record. (Tr. 315). There is no record of an office visit with Dr. Kennedy before surgery was scheduled.

On July 21, 2014, Dr. David Kennedy and a Dr. Robson performed surgery

consisting of laminectomy and foraminotomy at L4-S1and posterior fusion with insertion of instrumentation at the same levels. (Tr. 265-266). He was to be seen by Dr. Kennedy about one month after surgery. (Tr. 258).

There are no office notes from Dr, Kennedy in the record. However, plaintiff did have physical therapy from October 2014 through March 2015. Dr. Kennedy is listed as the referring physician on those records. (Tr. 283-300).

A doctor in plaintiff's primary care physician's office performed a preoperative evaluation for an ablation procedure to be done on March 10, 2015, by Dr. Moulton. Plaintiff had been hospitalized in January 2015 and diagnosed with atrial flutter. (Tr. 308, 523).

The next record related to back treatment is a preoperative evaluation done by Dr. Merkel in October 2016. This was for a revision of the 2014 surgery to be done by Dr. Kennedy. (Tr. 693). There is no record of an office visit with Dr. Kennedy prior to Dr. Merkel's evaluation.

Drs. Kennedy and Robson did the revision on October 17, 2016. The diagnosis was pseudoarthrosis at L4-5 and L5-S1 and foraminal stenosis at the same levels. (Tr. 955). The discharge summary stated "Based on findings during surgery patient will require additional lumbar stabilization. [W]ill require L4 through S1 anterior lumbar fusion and will be scheduled for an alternate date." (Tr. 918). He was to follow up with Dr. Kennedy's office in six weeks. (Tr. 708).

In November 2016, Dr. Moulton noted that plaintiff had been experiencing progressive worsening of his cardiac arrhythmia both in terms of frequency and

duration over the last few months. (Tr. 561-562).

There is no record of an office visit with Dr. Kennedy after the October 2016 surgery. However, he was admitted to the hospital for an anterior fusion to be performed by Dr. Kennedy in December 2016. He was prepped for surgery, but surgery was not done because he developed atrial fibrillation. (Tr. 930, 933, 946).

Dr. Moulton performed a pulmonary vein isolation ablation procedure on January 10, 2017. (Tr. 593).[5] The procedure was repeated in March and June 2017. (Tr. 637-639, 670). In June, Dr. Moulton noted that plaintiff was supposed to have a third back surgery, but it was not done because of "the arrhythmia problem." Plaintiff said he would like to get another opinion about having a third back surgery. (Tr. 602).

## **Analysis**

Plaintiff argues that the ALJ failed to adequately develop the record by obtaining all his relevant medical records.

An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 404.1512(b). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits [internal citation omitted]." *Sims v. Apfel*, 120 S. Ct. 2080, 2085 (2000). While that duty is enhanced where plaintiff was pro

---

[5] "Pulmonary vein isolation is a procedure used to stop abnormal electrical signals in your heart that cause heart rhythm problems. Pulmonary vein isolation is a type of cardiac ablation. Cardiac ablation works by scarring or destroying tissue in your heart that triggers an abnormal heart rhythm." https://www.mayoclinic.org/tests-procedures/pulmonary-vein-isolation/about/pac -20384 996, visited on August 1, 2019.

se at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)("This duty is enhanced when a claimant appears without counsel....").

Here, it is obvious that the record was not fully developed. To begin at the end, plaintiff testified at the hearing that he had very recently seen a doctor for another opinion regarding a third back surgery, and had another MRI done. The ALJ apparently made no effort to obtain those recent records even though he told plaintiff that the visit would be considered. In fact, the ALJ did not even ask the name of this doctor. (Tr. 55).

There are obvious gaps in the records that are part of the transcript. There are no office notes from Dr. Kennedy; the first time Dr. Kennedy appears is on the day of the first surgery. Common sense dictates that it is highly unlikely that Dr. Kennedy scheduled back surgery without first having seen the patient. Plaintiff obviously follow up with Dr. Kennedy after the surgery, as Dr. Kennedy referred him to physical therapy, but there is no record of that follow-up. And, there are no records of Dr. Kennedy's observations leading up to or following the second surgery. It is apparent that the second surgery did not fix all of plaintiff's back problems, since the discharge summary states, "Based on findings during surgery patient will require additional lumbar stabilization. [W]ill require L4 through S1 anterior lumbar fusion and will be scheduled for an alternate date." (Tr. 918).

To compound the problem, the ALJ misunderstood or overlooked some of

the records that were before him. He noted that plaintiff had revision surgery, referring to Ex. 9F/2 and 12F/229. (Tr. 24). This is a reference to the second surgery in October 2016. However, the ALJ missed the fact that the discharge summary at Ex. 12F/229 (Tr. 918) clearly stated that plaintiff needed an anterior fusion procedure.

The ALJ stated that the "record goes silent" after the second surgery regarding back treatment. That is incorrect. The record reflects that plaintiff was admitted to the hospital and prepped for the anterior fusion in December 2016, but the procedure was called off because plaintiff went into atrial fibrillation. (Tr. 930, 933, 946). The ALJ did not understand or overlooked this development. He also overlooked the fact that plaintiff told Dr. Moulton that he wanted another opinion about a third back surgery and got such an opinion shortly before the hearing.

The Commissioner argues that plaintiff was represented by counsel and the ALJ was entitled to assume that he put on his best case for benefits. However, as was explained above, the ALJ still had a duty to compile a complete record. The Commissioner also argues that statements made by plaintiff and his attorney "reasonably led the ALJ to believe that the record was complete." Doc. 18, p. 4. It is hard to see how that could be correct. The ALJ asked counsel if he had "sent us or informed us of all the documents which need to be offered into the record that relate to the claimant's disability?" (Tr. 35). The attorney said yes, but also informed the ALJ that plaintiff had recently seen another doctor about his back and had an MRI done. So, the attorney's answer was correct in that the agency had

been *informed* of all records. This is a far cry from stating that the record contained all of the relevant medical evidence; in fact, it was a statement that the opposite was true. Further, no alert reader of the record would have reasonably believed that it was complete. And, the ALJ affirmatively stated that the most recent doctor visit would be considered.

Plaintiff argues that the omission of relevant records was prejudicial because the ALJ could not properly evaluate the medical opinions, his subjective statements, or his RFC. The Commissioner argues that the ALJ correctly assessed these issues. The Court is not convinced. The ALJ did not have all of the relevant records and did not correctly understand the records that he did have.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The Court must conclude that the ALJ failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE: August 6, 2019.

*Donald Wilkerson*

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**